Good morning, Your Honors. May it please the Court, my name is Megan McMahon and my co-counsel Wesley Chung and I represent appellant Richard Kimbro in this matter. At this time, I would like to reserve three minutes for rebuttal. My co-counsel Wesley Chung will be addressing the evidentiary issue at trial as well as the feral to appoint counsel. In the interest of time, I will limit my discussion to the excessive force and supervisory liability claims. Your Honors, this is a case about an inmate who became increasingly concerned that infection would return to his kidneys and was in such severe pain that he made a desperate plea for medical attention by going man down on September 24th. In response to this plea, Sergeant Hoagland threatened Mr. Kimbro, stating, quote, if you ever go man down on my shift again for medical and are not dying, I will have my officers beat you. Now, Sergeant Hoagland made good on this promise just two months later when Mr. Kimbro threatened to go man down to receive his medication. On that date, officers Kelly McBride took force Mr. Kimbro outside and did nothing but his shower shoes and underwear and proceeded to, excuse me, push him against the wall and slam him to the ground. Now, despite these allegations, the District Court dismissed Mr. Kimbro's excessive force claims and failed to construe his complaint as alleging a supervisory liability claim. First, as to the excessive force claim, the District Court dismissed Mr. Kimbro's claim because, according to the court, he failed to sufficiently describe the officer's reasons. First, this court in Byrd v. Phoenix Police Department, which we referred to in our 28-J letter, reversed the District Court's dismissal of a pro se plaintiff's Fourth Amendment excessive force claims that was based on the same erroneous analysis. In reversing the District Court, this court held that a pro se plaintiff's allegations that the officers, quote, beat the crap out of him, causing 70% vision loss, was sufficient to state a claim because it made plain that the officer's use of force was unreasonable under the circumstances. This suggests that a pro se plaintiff like Mr. Kimbro need not describe the officer's conduct in detail, as long as his allegations demonstrate that force was used and that it was a complaint. I thought your argument was that the attachments to the complaint and the amendments that he tried to make gave more detail, so there was enough detail anyway. Yes, Your Honor. That is our position. The incomplete copy of his 602 appeal, which he was attached to as complaint, sufficiently describes the officer's conduct. And in addition, the medical report demonstrates and elaborates on the injuries that they caused. Can I ask? You didn't list the ADA claim in your division, but it seems like it's related to this claim about the snow. So can you explain a little bit more what his ADA theory is? Yes. His ADA theory is essentially that he is a mobility and hearing impaired inmate and that he's required to wear a vest once outside his cell, as required by the court order remedial plan in Armstrong v. Davis. Now, the officers refused to allow him to put his vest on before the transport and refused him the ability to, essentially refused him the ability to be in a wheelchair. And essentially that's, his claim is that he was not transported in a manner consistent with his disability. And does he think that is why he ended up injured? I'm not quite sure I understand the damages or the full theory of how this ADA thing mattered. Yes, that is his position, that he would not have been injured. The officers would not have treated him as they did because if he was wearing his vest, for example. So do you think that's already clear from the complaint or you would need leave to amend to make that clear? I believe it is clear that there are damages alleged in the complaint, namely that the transport itself was a painful experience for Mr. Kimbrough. The leg caused abrasions to his ankles and it made him trip on several times during the escort. If he was in a wheelchair, those injuries would have been prevented. But however, if this court believes that leave to amend was warranted, we would ask that they reverse and remand for leave to amend. Going back to the excessive force claim, the complete copy of Mr. Kimbrough's 602 appeal, which the defendants attached to their motion to dismiss, elaborates on the defendant's conduct and demonstrates that the defendants had notice of Mr. Kimbrough's claim. Moreover, Mr. Kimbrough's complaint raises an inference that the officers acted maliciously and sadistically for the purpose of causing harm, in that he alleges that no force was necessary because he did not resist at any point during the escort and obeyed the officer's orders to cuff up. In addition, his allegations that the officers forced him outside in nothing but his underwear and shower shoes must be credited to show that the officers acted maliciously and sadistically. In sum, Mr. Kimbrough stated a sufficient excessive force claim against the officers and this court should reverse the district court's dismissal accordingly. Now moving on to the supervisory liability claim, the district court failed to construe Mr. Kimbrough's complaint as alleging a supervisory liability claim at screening. This is tantamount to an improper dismissal under Section 1915a because Mr. Kimbrough's allegations not only raise an inference that Sergeant Hoagland ordered his subordinates to beat Mr. Kimbrough up, but also suggest that Sergeant Hoagland was present and failed to intervene in that use of force. But the magistrate judge let the claim against Hoagland continue on, and it was eventually the district court judge who granted summary judgment, I think, against Hoagland. And it was really the district court judge who ultimately adopted the magistrate judge's findings and recommendations about not being able to raise an argument in the briefing and summary judgment. So isn't that just an error that the district judge made, not something going all the way back to the screening stage? I don't really know why you're focused on the screening stage. It is our alternative position that the district court erred by granting defendant summary judgment and not allowing Mr. Kimbrough to proceed on a theory of liability. But at summary judgment, weren't they, wasn't the issue or the claim framed as excessive force against Hoagland, and that was the only issue that was addressed at summary judgment in terms of putting on the shackles? Yes, it was, Your Honor. And we believe that was error because his complaint did provide sufficient notice of a supervisory liability claim. Therefore, the district judge, district court should have allowed him to proceed on that theory of liability at the summary judgment stage. Alternatively — And if we agree with you about that, is there any reason to say anything about the screening issue? Essentially, these are alternative arguments that we have made in the complaint. Did the magistrate judge in his screening order actually identify what was the cognizable claim that was being stated against Hoagland? Or did he just say you stated a cognizable claim? That's where a lot of the confusion arises, Your Honor. The screening order itself, although it reiterates the factual allegations that support the supervisory liability claim, it does not specify what claims are cognizable against Sergeant Hoagland. So it doesn't foreclose supervisory liability, does it? No. However, going forward, the district court clearly closed that option off when it said that the only cognizable claim against Sergeant Hoagland was for placing the leg irons on him. Alternatively, the district court erred by failing to construe the matter raised at If the court had done so, they should have granted Mr. Kimbrough leave to amend under Rule 615. In conclusion — But your position is he doesn't even need to amend the pleadings. It was in the complaint all along, right? Yes, Your Honor. That's essentially an alternative argument if you credit the district court's conclusion that his complaint did not provide sufficient notice of this theory of liability. In conclusion, we ask this Court to reverse and remand for further proceedings on this claim or an alternative to grant Mr. Kimbrough leave to amend upon remand. I see that my time is running out, and I would like to cede the floor to my co-counsel, Wesley Chung. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court. My name is Wesley Chung, and I represent Pell and Richard Kimbrough. In the interest of time, I would like to focus on two specific issues, first the evidentiary issue and, second, the appointment of counsel issue. First, there were at least two types of evidence that should have been admitted and would have made a difference to the outcome because they provided independent corroboration for otherwise uncorroborated testimony of a prisoner plaintiff. The first type of evidence were – includes two medication reconciliation forms that were not admitted because when Kimbrough sought to introduce them during trial, defense counsel made an invalid objection that she was not hearing any questions being asked, and instead of reprimanding her, the lower court agreed with her and told Kimbrough to just ask questions. Now, had the lower court made a proper ruling, those forms would have come in. Our briefs have discussed why they are relevant and prohibitive and why their exclusion likely tainted the verdict. What we want to elaborate on is that these forms were authenticated already through a pretrial stipulation, and the purpose behind the stipulation was to authenticate these documents as business records, and proof for this interpretation of the stipulation can be found in several documents, the first of which is actually a request that was made by defendants to the lower court found in ECF-166, where they asked for permission to allow their own witnesses who were custodians of records to authenticate plaintiff's central and medical files through declarations. But that's different. I mean, just because you're authenticating it as authentic doesn't mean it meets all the criteria for business records, right? Your Honor, we're contending that we should look at the context behind the stipulation. And the reason why defendants were making – wanting to make that stipulation was to have custodians authenticate those documents as business records. The language custodian is precisely the language that is found in Federal Rule of Evidence 803-6, the rule for business record exception. And the purpose behind their – But did anyone talk about whether they were prepared in the normal course of business and all the other prongs of business records? So defendants wanted the custodians to just do that through declarations. And in response, the lower court said – asked defendants if all the parties would just stipulate to the authenticity of the files in all parties' exhibits without even any need for custodians. And defendants agreed to that suggestion. And attached to their stipulation was a declaration testifying that she – defense counsel had called Kimbrough before making the stipulation. And during trial, Kimbrough further elaborated on the content of the phone call, saying that when defense counsel called her – called him, she told him that the purpose was to avoid the need for custodians coming to court. But the authenticity is different from laying the foundation for a hearsay exception. You would agree? I'm sorry, Your Honor, can you – Authenticity is different from laying the foundation for a hearsay exception. In other words, you may stipulate to authenticity, but you may say you can raise an objection as hearsay because the documents didn't satisfy the requirements of the exception. Your Honors, we are contending that the authentication was to authenticate them as business records. So if they were business records, they would have bypassed any hearsay objection. So maybe you could talk about why these documents would have made a difference, because I think that that's a hurdle that is a little hard for you to get past, given Clark's testimony that she did whatever the paperwork said. How can these documents have contradicted her testimony in that regard? The medication recognition forms were – provided objective – were objective prisoner records that were inconsistent with Clark's testimony that Kimbrough's medications were automatically discontinued when he went out for surgery. And given Kimbrough's status as a prisoner against the words of prisoner officials, it would have helped a lot if the jury had heard independent corroboration of his testimony. And further evidence of how it would have helped was that the jury took around four hours and even sent a note to the court asking why the documents were not admitted. So we believe that it would have made a difference. Am I right that Plaintiff doesn't dispute that Clark gave him Tylenol, in fact, Tylenol with codeine, I think, throughout the period? So he's claiming it's only some medications that were denied? So I believe Kimbrough is contending that Clark did not provide any medication for at least five days. She completely failed to attend to his serious medical need for at least five days. Your Honor, another piece of evidence that shouldn't have been admitted was the note that includes interdisciplinary progress notes written by Mr. Barretts. And we contend that that note was also already authenticated because it was actually part of defendant's exhibits. In defendant's pretrial statement found in UCF 107, page 11 on their exhibit list, the first item is, quote, Plaintiff's relevant medical records including but not limited to, end quote. That language should have been, it's so broad, it should have been understood to include all Plaintiff's records that are relevant to the case. Right. But again, we get down to the authentication versus hearsay exception difference. And there's nothing I see in the record that establishes the foundation for the exception to hearsay exception, to apply the hearsay exception. In other words, it could be authentic, but it's still excludable as hearsay. Your Honor, because they were using the language custodian, and that is precisely the language that is found in the rule for the business record exception, we contend that there is no other reason but to authenticate these documents as business records. There was no other reason that could have been conceivable for the stipulation. But that fact doesn't mean that you, that at trial, they said here, we're laying the foundation for the admission of these evidence as an exception to hearsay rule. You can't just say it's authentic and it was produced by a business and get around the hearsay rule. Your Honor, but if they're business records, then they fit under the business hearsay exception, business record exception. If you lay the foundation. I don't see where you laid the foundation in this case. Not you, but your client. So and that was what the district court said, right? So what's the abuse of discretion? Well, if we view in the context of the stipulation, Your Honor, defendants wanted to lay the foundation through declarations. And the lower court was saying in response, we don't even need the custodians. Let's just stipulate to the authenticity of the documents as business records. And defendants agreed to that. So we contend that they were already business records. Your Honor, if there are no further questions, I would like to reserve for making time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. My name is Martha Ehlenbach, and I represent the defendants at Pelley's with the exception of defendant Miranda. And would you move the microphone down just a little bit so we can hear you better? Yes, Your Honor. I'd like to reserve five minutes of argument for Shannon Hewitt, who is counsel for Miranda. This court should not disturb the jury verdict in Nurse Clark's favor because there was no error throughout the course of the trial. And the magistrate judge properly screened Mr. Kimbrough's complaint, appropriately allowed Mr. Kimbrough leave to amend at the motion-to-dismiss stage, and was within its discretion in denying leave to amend years later when Mr. Kimbrough attempted to bring a new claim in at summary judgment. By the new claim, you mean the supervisory liability? That is correct, Your Honor. And how is that a new claim? Because there's no allegation in the complaint that Sergeant Hoagland ordered these particular officers to do anything on this December 23, 2008 date where the allegations But why can't it be an inference? If he — if there is an allegation that he made the threat, if you go man down, I'm going to have them beat you up, he is the supervisor, then there is an attempt to go man down, and then there's an allegation that the officers who work under Hoagland go and beat him up, doesn't that connect to enough to at least, with inferences in favor of a pro se plaintiff, state a claim for supervisor liability? No, Your Honor, because we don't know that these are the officers that he generally commanded. We don't know anything connecting that statement made months before with this incident in December, and there's no other connecting facts in the complaint. So why isn't that something that could have been explored in interrogatories during discovery? Or, I mean, if you were wondering, is he making a supervisory liability claim, then couldn't that have been asked of him? I mean, it seems like you construed the complaint in a certain way and argued it in summary judgment, and he comes back in opposition to summary judgment and says, no, that's not what this claim is. I'm not sure why he should be precluded from doing that.  But I guess the part I'm having a tough time getting past is that the screening, the original complaint seemed to have sufficient allegations, and the magistrate judge's screening order simply says that there's a cognizable claim against Hoagland. And in fact, the only allegations, if I recall correctly, that the magistrate judge's screening order references are the allegations that arguably support maybe a supervisory liability. And then the claim sort of disappears and doesn't, never comes up again. And then the defendants file a motion to dismiss. And it seems like it's premised on the leg irons at that point. So the prisoner, how was he supposed to know? I mean, he arguably stated two cognizable claims in the initial complaint, right? I mean, to the extent he believed that Hoagland put the leg irons on him, that's one. And then the supervisory liability claim, that's two. But the magistrate judge never told him what the claims were. So I guess, how's the prisoner, how was he supposed to know? The magistrate judge did and gave him several opportunities to amend his complaint. What are you pointing to when you say the magistrate judge foreclosed supervisory liability? The decision on the motion to dismiss, and I believe the final order of dismissal is in the record at 541. But the findings and recommendations, I'd have to find the exact site to that. But it indicated which claims would be going forward. And what did it say to make clear that supervisory liability was foreclosed? It said that the claim going forward against Sergeant Hoagland was a claim that he personally applied leg irons too tightly. And it said the only claim? I guess it would help me if you knew what page that was on. If your honor would give me a second to look at the record. It's in the record at page 568, your honor, where the court describes the claims on which Mr. Kimbrough will be proceeding. I think that still begs the question, though, because the description in the magistrate judge's order is still simply limited to the leg irons. And there's nothing, it doesn't talk about the allegations about the supervisory liability allegations. And he didn't say, I find you state a deliberate indifference claim. Or I mean an excessive force claim as to the leg irons, but not a supervisory liability claim. He just sort of did it by omission. He just sort of said you state a claim as to the leg irons, we're going to proceed on that. And the supervisory liability claim sort of just disappeared. There was no explicit supervisory liability claim pled or found cognizable earlier. At that point, the parties knew what claim was going forward. And I would submit that, again, there's no allegation that Sergeant Hoagland ordered these officers to do anything. And the complaint doesn't explain whether he was present for these uses of force. That he ordered these particular officers to do anything. There just wasn't anything there in the complaint that would have put defendants on notice that this was the claim that they were proceeding on. If there are no further questions on that point, I'd like to move on to my next point. Which is that the dismissal of Mr. Kimbrough's excessive force claims with leave to amend was appropriate. Mr. Kimbrough alleged that officers used excessive force against him. With no facts supporting any theory of liability other than that against officers Kelly and McBride. And now Mr. Kimbrough points to a document outside of the complaint to argue that the allegations were sufficient. But while that would be appropriately considered by the district court in granting leave to amend, it was not part of the complaint here. And it would not be considered to state a claim on that basis. So the records of his grievance documents, they were not attached to the complaint? The records of the grievance record that Mr. Kimbrough is pointing to on appeal is in the record at page 679, and that's not a part of his complaint. That's actually attached to defendant's motion to dismiss. And that's the portion where Mr. Kimbrough argues that he explained his allegations against officers Kelly and McBride. And that he said what they did to him. And he did include additional information in that document. And that's what the district court considered when granting leave to amend. But again, it was not part of the complaint. The complaint did not include any additional allegations other than these officers acted with excessive force. And it included appeal responses, but those responses were written by third parties. And they were also similarly vague with respect to the allegations against those officers. So that's another reason as well why a supervisory liability claim against Sergeant Hoagland was not cognizable, at least with respect to that claim. So wait a second, it wasn't ER 745, you're right, it's a response. But if he attaches that to his complaint and it talks about the claim he's making is that you were placed in handcuffs behind your back and then you're taken outside and there were leg irons put on you and they wouldn't let you get dressed, all of that. Why is that not enough detail and why for a pro se plaintiff is that not a way to make specific enough allegations? Again, that's a third party summary of what Mr. Kimbrough was presumably attempting to say in a grievance, in a different document. So there'd be a number of inferences that the district court would have had to have drawn in order to conclude that that's what Mr. Kimbrough was talking about in this complaint. When he said- That's enough to say to Mr. Kimbrough, okay, Mr. Kimbrough, I see all this stuff and looks like there's something there, go ahead and amend, now put it all in the complaint, basically. And that's what the district court did here, Your Honor. But then didn't he amend and he gave more detail and the district court refused to look at it? No, Your Honor. The district court granted him leave to amend and Mr. Kimbrough attempted to amend piecemeal. The district court then gave him a further order on the motion to dismiss saying, an amended complaint must be complete into itself, and allowed Mr. Kimbrough at that point to file a new amended complaint. Mr. Kimbrough did not do that. And so at that point, district court recommended dismissal and the dismissal was then completed by the district judge. I see my time is up, if you'd like me to- But the dismissal was on the merits though, right? Because at that point then, we're left in the same position, right? Because the magistrate judge recommended that the dismissal be for the reasons stated in the original order, in his original findings, which was on the merits. So we're in the same position, we're looking at whether or not the documents that were attached were sufficient to go forward. That is correct, Your Honor, and our position would be that they were not. That they were sufficient to allow Mr. Kimbrough leave to amend, and that's what happened here, is that he was granted leave to amend. But that they were not sufficient to state a claim. Unless there are further questions, I will submit. Thank you. Good morning, Shannon Hewitt on behalf of Mr. Miranda. This appeal addresses just one issue against Mr. Miranda. And that's the allegation that he failed to return Mr. Kimbrough to Reno for his second surgery. So Mr. Miranda actually prevailed on a motion to dismiss that claim based on failure to exhaust administrative remedies back in 2013. In the interest of time, I'd like to focus on Mr. Kimbrough's two inmate appeals at issue in this case against Mr. Miranda. So the inmate appeals focus on him asking for medication, but they also say the surgery was delayed. And I'm not sure why, for someone who's a prisoner who's not a doctor, saying I have this problem. I haven't had the surgery I was supposed to have, and I don't have medication. Why that's not enough to tell the prison both that he didn't yet have the surgery and that he didn't have the medication? Well, Your Honor, I think that the key here is in the action requested. Mr. Kimbrough is very specific and emphatic about what his needs are. And that is refill meds ASAP, please refill my pain meds. That is the focus. And that's why the court ruled as it did in this case. But do you have a case that says that if a grievance lists a medical problem, that the prisoner has to correctly diagnose what medical care he needs if he's described the issue? I don't believe it's about diagnosis as much as the Griffin versus Arpaio case, which indicates that the inmate's grievance, it needs to advise the prison of the problem to be addressed. And Mr. Kimbrough was very specific about that. I need my pain meds, they have expired and they need to be refilled. And that is what was addressed by the prison at that point. Well, the second one says, the one dated September 7th, 2008, says that I'm due for surgery on kidney stones. Now, I mean, he had just had an operation and he's recovering from an operation, clearly needs the medications. He knows he has to have another operation. They know they have to take him back for another operation. At a minimum, it created a duty for the officials to at least investigate what was going on here. I mean, they were put on notice of that, right? That they should have investigated? Whether the surgery was delayed or whether he- What's been going on with him? You know, he needs the medication, he just had an operation, he talks about the surgery. I don't know what else he could have said. I mean, you know, he's a pro se litigant and what else could he have said, I guess? Well, Your Honor, I believe that in this case, because of the focus, the emphasis on the pain medication refill, that's what the prison was looking at. And the question of whether this is sufficient notice to the prison that Mr. Miranda failed to send him out to Reno for his second surgery, I think that's lost on these documents. And that's why the court ruled as it did in that motion to dismiss. And I do want to, as a side note, just note that the case did continue against Mr. Miranda as to the allegation about the pain medication. And that was disposed of by way of summary judgment, which has not been challenged by the appellant in this case. If we disagree with you about the exhaustion ruling and think the district court erred in that, do you have an argument about whether it's the complaint states a claim that should have survived? I did, Your Honor. In the interest of time, I didn't address that, but I appreciate you bringing that up. Indicated in my brief, I did argue that the allegations themselves in conjunction with the attachments in the complaint was not sufficient to state a claim against Mr. Miranda. So if we agree with you, though, shouldn't he have been given leave to amend? I mean, that's the kind of thing that could be cured. I mean, you might say he can't because he can't honestly say it, but he at least could have the opportunity to plead more. Well, as I understand it, with Ms. Erlenbach, that she had mentioned about the progression, the issues regarding the leave to amend, and that he was permitted, but didn't, I guess, But on this issue, he never knew that he would have to state more allegations against Miranda, specifically as to the denial of surgery. I mean, perhaps he has more allegations he could make. You know, I don't know if we could speculate regarding that, if he had more that he could bring against Mr. Miranda. But the court did permit him to proceed with the issue regarding the pain medications, all the way to summary judgment. And again, the screening order, as I mentioned, in conjunction with the motion to dismiss, or rather, in conjunction with the complaint, shows us that there really doesn't appear to be a cognizable claim regarding Mr. Miranda about that failure to send him out to surgery. Okay, thank you. Thank you, counsel. We'll hear rebuttal, and we'll put on three minutes. Thank you, your honors, for giving me additional time. I will try to make this brief. First, the defendants erroneously argued that the staff response is encompassed within the 602 appeals cannot be considered in determining a motion to dismiss. Defendants merely cite Rule 8 to support this conclusion. However, Rule 8 does not stand for that proposition. In contrast, Rule 10c in this court's precedent demonstrates that attachments to the complaint can be considered on a motion to dismiss, and the contents of which can be viewed in light most favorable to the plaintiff and assumed as true. These attachments to the complaint, although Mr. Kimbrough attached an incomplete copy of his 602, it still sufficiently describes the defendant's conduct. We merely argue that the court should have considered the complete copy of the 602 appeal attached to the defendant's motion to dismiss because it further elaborates on the defendant's conduct and demonstrates that defendants had notice of his claims, which is the purpose of this pleading requirement. In addition, as to the Hoagland claim, defendants erroneously argue that there's no allegation that Hoagland specifically ordered his subordinates to use force on this state. However, Mr. Kimbrough's complaint alleges a sufficient causal connection between the threat on September 24th and the actions of the officers on December 23rd. He was on duty on the night on September 23rd, and Mr. Kimbrough threatened to go man down. These were the two factual predicates which Mr. Kimbrough, sorry, pardon me, Sergeant Hoagland threatened in his threat. In addition, defendants erroneously argue that Kimbrough failed to state a claim for which relief can be granted as to the claim that Miranda failed to return him to surgery. However, let me ask you a question about that. The opposing counsel had said that the district court eventually dealt with the medical claims as they relate to Miranda. I thought that the district judge had granted summary judgment or approved the magistrate judge's recommendation, granted summary judgment for Miranda for failure to exhaust. The district judge never got to the merits of the actual claim on the return for surgery, or am I missing something? Yes, that's correct. The district court dismissed this claim at the motion to dismiss stage for failure to exhaust administrative remedies. Not at the summary judgment stage? I thought it was at the summary judgment stage. No, Your Honor. There's a separate claim against Defendant Miranda, which proceeded to summary judgment and was dismissed at that time, which we are not appealing. And that had to do with medication, right? Oh, that's denial versus the returning him for surgery. Okay. Your Honor, the evidence in the complaint alleges that Kimbrough, that Mr. Defendant Miranda was aware of his need for surgery because the nurses had referred Mr. Kimbrough to Defendant Miranda, and the evidence shows that Miranda was his primary care provider at that time. In conclusion, the district court should hold that Mr. Kimbrough stated a sufficient claim against Defendant Miranda, or in the alternative, grant him leave to amend. Because it's clear that under this court's precedent, a pro se inmate must be given leave to amend unless it's absolutely clear from his complaint. That no relief can be granted. Thank you, Counsel. Thank you. And thank you for your pro bono representation today.
judges: Thomas, Friedland, Olguin